Lucette RIVERA–COTTO,
Plaintiff, Appellant,

v.

Ramon Luis RIVERA, et al.,
Defendants, Appellees.

No. 93–2088.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1994.

Decided Oct. 26, 1994.

Evelyn Narvaez Ochoa, San Juan, PR, for appellant.

Edgardo Rodriquez Quilichini, Asst. Sol. Gen., with whom Pedro A. Delgado Hernandez, Sol. Gen., Carlos Lugo Fiol, Deputy Sol. Gen., San Juan, PR, were on brief, for appellees Ramon Luis Rivera and Jose Garcia–Rivera.

Demetrio Fernandez Quinones, Rio Piedras, PR, was on brief, for appellee Municipality of Bayamon.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

In this appeal, plaintiff-appellant Lucette Rivera–Cotto ("Rivera–Cotto") challenges the district court's entry of summary judgment in favor of defendants-appellees, the municipality of Bayamon, Puerto Rico ("Bayamon"), its Mayor, Ramon Luis Rivera ("Mayor Rivera"), and Bayamon employee Jose Garcia–Rivera ("Garcia–Rivera") on her claims of political affiliation-based discrimination and discrimination because of her physical handicap. For the reasons set forth below, we affirm the district court's entry of summary judgment.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

We relate the facts in the light most favorable to the non-moving party. *See, e.g., Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 702 (1st Cir.1993). This case arises from Rivera–Cotto's employment relationship with Bayamon. Rivera–Cotto, a partially deaf person who must use a hearing aid, first began to work for Bayamon on a temporary basis in 1969. By 1971, she had attained permanent status and, in 1980, she became an Administrative Officer III in the legal division. She remained in that position until early 1986 when the events leading to this litigation began.

On February 6, 1986, Rivera–Cotto's immediate supervisor asked her for some information to assist the supervisor in preparation of budget documents. Believing this to be an attempted usurpation of her duties, Rivera–Cotto balked. A heated encounter ensued during which threatening words were traded. This exchange was one more episode in an already troubled relationship. The following day, the supervisor dispatched a memorandum to Mayor Rivera reporting the incident and requesting that Rivera–Cotto be transferred out of the division. Mayor Rivera responded by suspending Rivera–Cotto from employment and salary for thirty days.[1] At that time, however, Rivera–Cotto was not transferred.

On July 16, 1986, the Mayor notified Rivera–Cotto that, because of a "need for [her] services," she would be transferred to the position of Administrative Officer III at the Multiple Activities Center for the Elderly. Rivera–Cotto, however, claims that the transfer occurred, at least in part, because she had been incorrectly identified as a member of the opposition Popular Democratic Party ("PDP"). In fact, she is a member of the New Progressive Party ("NPP"), the party in power in Bayamon. While working at the Elderly Center, Rivera–Cotto claimed that co-workers and supervisors subjected her to various forms of ill-treatment including changed duties, denial of lunch, denial of office supplies, unfair disciplinary warnings, and isolation.

Meanwhile, Rivera–Cotto appealed both the transfer and the earlier suspension to the Board of Appeals of the Personnel Administration System ("JASAP"). JASAP reduced the suspension to ten days and ordered the municipality to reassign Rivera–Cotto to her former position at the legal division. JASAP found that the facts did not support the claim that personnel needs necessitated her origi-

---

1. Rivera–Cotto does not claim that either the suspension or loss of pay violated her constitutional rights.

nal transfer. Bayamon's appeals were ultimately unsuccessful and Rivera–Cotto has since returned to the legal division.

In 1988, Rivera–Cotto commenced the present action in which she sued appellees pursuant to 42 U.S.C. § 1983 alleging violations of her constitutional and statutory rights. Specifically, Rivera–Cotto alleged she was transferred and subjected to other forms of harassment because of her political affiliation. She also claimed that she was subjected to discrimination because of her handicap and sought damages flowing from defendants' acts of discrimination as well as injunctive relief.

The district court granted defendant's motion for summary judgment. Judgment was entered against Rivera–Cotto and her complaint was dismissed. This appeal followed.

## II.

### DISCUSSION

On appeal, Rivera–Cotto makes the following arguments: (1) the district court erred in granting defendants' motion for summary judgment as to both the political discrimination and physical handicap claims; and (2) the district court erred in finding that Mayor Rivera and Garcia–Rivera were entitled to the defense of qualified immunity. After reciting the summary judgment standard, we first discuss the political discrimination argument and then the physical handicap claim. Because we find that Rivera–Cotto has failed to satisfy her burden under summary judgment, we do not reach the question of qualified immunity.

### A. Standard of Review

■ We review a district court's grant of summary judgment *de novo,* reading the record in a light most favorable to the nonmoving party. *See, e.g., Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir. 1994). When presented with a motion for summary judgment, courts should "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether

trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Summary judgment is rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). "Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." *Dow v. United Bhd. of Carpenters,* 1 F.3d 56, 58 (1st Cir.1993).

### B. Political Discrimination Claim

As noted above, the district court granted summary judgment on Rivera–Cotto's political discrimination claim. Applying our decision in *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209 (1st Cir.1989) (en banc), the court held that Rivera–Cotto had failed to establish, by clear and convincing evidence, that defendants' actions resulted in a work situation that was "unreasonably inferior" to the norm. Rivera–Cotto disputes the court's interpretation of the evidence. We agree with the result below but come to it by a different route.

■ In political discrimination cases, a plaintiff-employee who has held a non-policy-making government job [2] avoids summary

---

2. Defendants do not contend that Rivera–Cotto held a confidential or policymaking position for

which partisan political affiliation might have been a legitimate requirement. *See Branti v.*

judgment by pointing to evidence in the record which, if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus. *Nereida–Gonzalez,* 990 F.2d at 706. The fact finder must reasonably be able to infer that political affiliation was a "substantial" or "motivating" factor behind the challenged action. *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993); *Aviles–Martinez v. Monroig,* 963 F.2d 2, 5 (1st Cir.1992); *Agosto–de–Feliciano,* 889 F.2d at 1220. Without more, a nonmoving plaintiff-employee's unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment. *Cf. Nereida–Gonzalez,* 990 F.2d at 706 (discriminatory animus found where statement by defendants, though controverted, that plaintiff's demotion was due to party affiliation combined with other evidence led to reasonable conclusion that plaintiff was a member of the opposition party, defendants had engaged in a sham reorganization, and other personnel actions only affected members of plaintiff's party); *Rodriguez–Pinto v. Tirado–Delgado,* 982 F.2d 34, 40 (1st Cir.1993) (allegations, not conclusively rebutted, that plaintiff was a known member of the NPP, that plaintiff's prior position was filled by members of the PDP, and that everyone who was demoted during reorganization was a NPP member, sufficient to establish political affiliation discrimination).

■ Rivera–Cotta has not sustained her burden. In her sworn statement, Rivera–Cotto asserts that the defendants believed that she was a member of the PDP when she was actually a member of the NPP. Our review of the record, however, reveals no other evidence to support this allegation. More importantly, there is no other evidence to support the allegation that defendants' wrongly held belief was the motivating factor behind Rivera–Cotto's transfer.[3] In fact, Rivera–Cotto's assertions about political motivation contradict her own interpretation of the events leading to the transfer. Rivera–Cotto repeatedly points to the JASAP report as support for her contention that the transfer was not pursuant to the "need for [her] services," as Mayor Rivera originally suggested, but rather flowed from Rivera–Cotto's altercation with her superior. Thus, by Rivera–Cotto's proffered reading of the record, defendants' motivation for the transfer was substantially disciplinary rather than political.[4]

Because Rivera–Cotto has failed to go the first step in establishing her constitutional claim, we need not proceed farther.[5] We find that the district court properly granted summary judgment.

### C. Physical Handicap Claim

Although the district court did not address Rivera–Cotto's handicap claim, we hold that summary judgment was properly granted.

Rivera–Cotto fails to offer any developed argumentation on this point. She simply refers us to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and to several cases without elaboration. She makes no effort to

*Finkel,* 445 U.S. 507, 517–18, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980); *O'Connor v. Steeves,* 994 F.2d 905, 909–12 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993).

3. Whether an employee's discharge arises out of "the government employer's belief, wrongly held, that the employee was in league with the opposition party" gives rise to a constitutional claim is an open question. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 57 n. 7 (1st Cir.1990). The question is similarly open in the context of a politically motivated transfer. We need not reach the issue here.

4. We note that at one point in her memorandum to this court, Rivera–Cotto argues that the transfer was "due to [her perceived political affiliation] and all the reasons herein mentioned."

The point remains that Rivera–Cotto has not argued, and the record will not support, a claim that her political affiliation was the substantial or motivating factor behind the transfer or any other ill-treatment she suffered.

5. This case especially underscores a principle we have noted before: "In the absence of a cognizable federal question, a federal court cannot intrude upon another sovereign's civil service system and declare itself a court of last resort to hear personnel appeals addressed to the wisdom, or even the good faith, of staffing decisions reached by government actors." *Correa–Martinez* 903 F.2d at 58. Rivera–Cotto has challenged, successfully, the validity of her transfer under applicable local law.

recite the well-developed doctrine in this area or to relate the law to the single piece of evidence on which she relies.

At oral argument, counsel for Rivera–Cotto conceded that there is only one factual allegation on the record to support her claim. A routing sheet from the municipality's finance department, dated October 30, 1990, bears a handwritten note that reads: "Waiting for quotation. Call the deaf woman." Upon review of the record, we also note that, in a deposition, Rivera–Cotto reported disparaging remarks made by Mayor Rivera and Rivera–Cotto's supervisor. Both remarks referred to her hearing imparity. Otherwise, we find the record contains only conclusory statements about alleged discrimination.

 Rivera–Cotto has failed to sustain her burden. To forestall summary judgment, we require more than "unsubstantiated conclusions, backed only by a few uncoordinated evidentiary fragments." *Wynne v. Tufts Univ. Sch. of Medicine*, 976 F.2d 791, 795 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Yet, that is precisely what Rivera–Cotto presents here. She alleges various forms of ill-treatment flowing from defendants' discriminatory animus based on her handicap. To bolster her claim, she offers no more than what we have described above. Further, Rivera–Cotto's specific allegation that defendants were motivated by handicap discrimination in transferring her is, as noted above, contradicted by her own interpretation of the transfer as disciplinary rather than discriminatory. Accordingly, the district court properly granted summary judgment on this claim.

### III.

### CONCLUSION

For the reasons stated above, the decision of the district court is

*Affirmed.*