Ernesto **GONZALEZ PINA**, Plaintiff,

v.

Jose Guillermo **RODRIGUEZ**; **The City of Mayaguez**, Defendants.

**CIVIL NO. 01–2037 (JAG).**

United States District Court,
D. Puerto Rico.

Aug. 7, 2003.

---

[7]. *See also* Answer to Defendants' Motion... (docket No. 22); Reply... (docket No. 23) and Second Answer... (docket No. 24).

Israel Roldan–Gonzalez, Aguadilla, PR, for Plaintiff.

Juan R. Gonzalez–Munoz, Salvador J. Antonetti–Stutts, Pietrantoni Mendez & Alvarez, San Juan, PR, Carlos E. Lopez–Lopez, Llovet–Zurinaga & Lopez P.S.C., Glorianna S. Hita–Valiente, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, Carlos M. Aquino–Ramos, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On August 1, 2001, plaintiff Ernesto Gonzalez Pina ("Gonzalez") brought suit against the Municipality of Mayaguez, and its Mayor, Jose Guillermo Rodriguez ("Rodriguez")(collectively "defendants") under 42 U.S.C. § 1983 and the due process clause of the Fifth and Fourteenth Amendments to the Constitution. He alleges that defendants have discriminated against him on account of his political beliefs. Gonzalez also sets forth certain supplemental state law claims.[1]

In essence, Gonzalez makes two allegations. First, he claims that defendants failed to give him a salary equivalent to his qualifications and experience and failed to promote him from the career position of Executive Officer I. Gonzalez had been appointed to this position as the result of a settlement in a previous political discrimination case between the parties. Secondly, Gonzalez alleges that defendants harassed him and failed to assign him any meaningful duties or responsibilities upon his return to the Municipality after the settlement of the previous case. As in the previous case, Gonzalez alleges that defendants have retaliated against him for his support of Rodriguez' political rival within the Popular Democratic Party (PDP) in the 1994 primary campaign.

Defendants filed a motion for summary judgment on April 25, 2003 (Docket No. 34).Gonzalez opposed the motion on May 16, 2003 (Docket No 37). Defendants tendered a reply on May 22, 2003 (Docket No. 43). For the reasons that follow, the Court GRANTS defendants' motion.

## SUMMARY JUDGMENT STANDARD

The standard for summary judgment is governed by Fed.R.Civ.P. 56. The court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A contested fact is 'material' when it has the potential to change the outcome of the case. *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). An issue is genuine if a reasonable jury could resolve

---

**1.** In view of our decision on the federal claims, the Court does not reach the merits of Gonzalez's supplemental state law claims.

the dispute for the nonmoving party. *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat a motion for summary judgment, the party opposing the motion must "present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). The non-moving party must show that a trial-worthy issue exists and must point to specific facts that demonstrate the existence of an authentic dispute. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Furthermore, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Nonetheless, the Court must never "weigh the evidence and determine the truth of the matter," *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505), and "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). "If, after this canvassing of the material presented, the district court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion." *Lipsett,* 864 F.2d at 895.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Local Rule 311.12

■ In compliance with Local Rule 311.12, defendants have submitted "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis for such contention as to each material fact, properly supported by specific reference to the record." D.P.R.R. 311.12. Plaintiff, however, filed a set of five (5) contested facts with generalized references to the record that do not specifically identify the evidence in the record to support his assertions. It is well-established that "a list of facts with no specific references to the record is of no use to the Court." *Hogar Club Paraiso, Inc. v. Varela LLavona,* 208 F.R.D. 481, 482 (D.P.R.2002). Plaintiffs cannot expect the Court to "ferret through the record, read all the answers to interrogatories, study all the attached documents and carefully scrutinize all the depositions for lurking genuine issues of material fact." *Dominguez v. Eli Lilly & Co.,* 958 F.Supp. 721, 727 (D.P.R.1997).

Local Rule 311.12 provides that the "moving party's statement will be deemed to be admitted unless controverted by the statement required to be served by the Opposing Party." D.P.P.R 311.12. Clearly, "parties who ignore Rule 311.12 do so at their own peril," *Hogar Club Paraiso,* 208 F.R.D. at 482 (*citing Velez v. Puerto Rico Electric Power Authority,* 170 F.Supp.2d 158, 162 (D.P.R.2001)), and "once so warned, a party's failure to comply would ... be grounds for judgment against that party." *Nieves Ayala v. Johnson & Johnson,* 208 F.Supp.2d 195, 198 (D.P.R.2002); *Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir. 2001). Accordingly, the Court hereby ad-

mits all the facts, submitted by defendants, that have been adequately supported by references to the record as follows.

## 2. Admitted Facts

On April 27, 1995, Gonzalez filed an action for political discrimination against the Municipality of Mayaguez, and its Mayor, Hon. Jose Guillermo Rodriguez (*Gonzalez Pina I*) (see Civil No. 95–1527). On September 22, 1997, once the jury trial in the case had commenced, the parties reached a settlement agreement in open court. The parties agreed to file written stipulations but failed to do so, accordingly, the Court entered judgment on February 17, 1998 making reference to the terms stipulated to in open court (*See* Civil No. 95–1527, Docket No 87). The Municipality agreed to pay Gonzalez $61,200 in back pay, including all benefits accrued since his dismissal. Payment was due in 60 days. Moreover, the Municipality agreed to appoint plaintiff to a career position with a salary "for which he qualifies which will never be less than $1,400 monthly." On his part, Gonzalez agreed he would retire as a municipal employee after 30 years of service. The settlement provided that he was to "continue his efforts to complete the requirements for retirement" which he "estimated that the time would be approximately one year and nine months".

On February 3, 1998, the Municipality paid Gonzalez the principal amount of $61,200.00 plus interest less statutory deductions. The Municipality appointed Gonzalez to a career position as Executive Officer I with a monthly salary of $1,500.00 effective October 1, 1997.

On February 5, 1998, Gonzalez filed a petition to have defendants found in contempt for failing to comply with the terms and conditions of the settlement agreement (*See* Civil No. 95–1527, Docket No. 85). In addition to claiming that the Municipality had failed to pay the settlement amount in a timely fashion, Gonzalez alleged that he was not appointed to a position with the salary for which he qualified. He sought an appointment to a position of Executive Officer VII instead of Executive Officer I. Defendants concede that Gonzalez is qualified for this position and that it would entail a higher salary.

On August 20, 1998, Magistrate Judge Justo Arenas issued a Report & Recommendation (*See* Civil No. 95–1527, Docket No. 100; Docket No. 34, Exhibit D), recommending that Gonzalez' motion for contempt be denied. The Magistrate Judge found that defendants had substantially complied with the terms of the consent decree. He found that Gonzalez' position was not supported by specific and clear language and that any omissions or ambiguities in the agreement had to be construed in favor of defendants. Specifically, the Magistrate Judge stated that Gonzalez' appointment to the position of Executive Officer I satisfied the Municipality's obligations under the settlement agreement. The Court, noting that no objections had been filed to the Magistrate Judge's Report and Recommendation, adopted it as its own on September 10, 1998 (*See* Civil No. 95–1527, Docket No. 101; Docket No 34, Exhibit E),

Gonzalez currently occupies the position of Executive Officer I with a monthly salary of $1,645. To date, he has more than 30 years in the service but he has not left his employment at the Municipality.[2]

Gonzalez filed this case on August 2, 2001 (*Gonzalez Pina II*), more than three years after the settlement reached by the parties in *Gonzalez Pina I*. In essence, he

---

2. Gonzalez does not respond to defendants' argument regarding his own alleged noncom-

pliance with the condition that he retire after thirty years in the public service.

alleges that defendants discriminated against him because they did not appoint him to a position and salary for which he qualifies and they deprived him of duties and responsibilities.

## DISCUSSION

Defendants make four arguments in support of their motion for summary judgment: (1) that Gonzalez' claims are partially or totally time barred by the doctrines of issue and claim preclusion; (2) that Gonzalez lacks the necessary evidence to establish a prima facie case of political discrimination; (3) that because Gonzalez continues to be employed at a career position with the municipality he has not been deprived of his property interest or due process of law; and (4) that Rodriguez is entitled to qualified immunity.

### A. Res Judicata

 The doctrine of res judicata, also known as claim preclusion, generally "binds parties from litigating or relitigating any issue that was or could have been litigated in a prior adjudication." *Futura Development Corp. v. Centex Corp.*, 761 F.2d 33, 42 (1st Cir.1985); *United States v. Alky Enterprises, Inc.*, 969 F.2d 1309, 1314 (1st Cir.1992). For res judicata to apply, three requirements must be met: "(1) a final judgment on the merits in an earlier action; (2) a sufficient identity between the parties in the two suits; and (3) a sufficient identity of the causes of action in the two suits." *Ortiz–Cameron v. Drug Enforcement Admin.*, 139 F.3d 4, 5 (1st Cir. 1998) (*citing Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996)); *see also Boateng v. InterAmerican Univ., Inc.*,

210 F.3d 56, 61 (1st Cir.2000). "Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." *Apparel Art Int'l, Inc. v. Amertex Enter. Ltd.*, 48 F.3d 576, 583 (1st Cir.1995).

 *Gonzalez Pina I* and *Gonzalez Pina II* are between the same parties, both include causes of action for political discrimination and the settlement in *Gonzalez Pina I* constitutes a judgment on the merits for res judicata purposes, thereby meeting all the elements of res judicata. Nonetheless, the Court finds that Gonzalez's claim of political discrimination is not precluded to the extent it is premised on new conduct occurring after his return to the Municipality.[3] Gonzalez cannot now assert a claim of political discrimination premised on facts that the Court already adjudicated in *Gonzalez Pina I*. to the extent his case is premised on these old allegations, collateral estoppel disposes of the matter and the Court will not allow Gonzalez to relitigate those issues (see Collateral Estoppel discussion below).

Gonzalez, however, also points to events which took place after his return to the Municipality as the result of the settlement in *Gonzalez Pina I* and the subsequent denial of Gonzalez's motion for contempt. Namely, he asserts that the defendants failed to assign to him any meaningful duties or responsibilities and that he was harassed and excluded from participation despite his appointment to a career position. Even though premised upon the

---

**3.** It is worth noting that plaintiff failed to contest any of defendants' facts pertaining to res judicata and/or collateral estoppel. In fact, plaintiff fails to raise any proper legal or factual arguments to oppose defendants' contentions in this respect. Plaintiff simply states that defendants failed to comply with the stipulations of the agreement and that they instead intensified their harassment against plaintiff on account of his political affiliation.

same political rivalry underlying his claim in *Gonzalez Pina I*, to the extent that the complaint presents facts occurring after the date of the prior litigation and/or that could not have been litigated in *Gonzalez Pina I*, the Court will consider them on the merits.

## B. Collateral Estoppel

■ Issue preclusion, also know as collateral estoppel, refers to a party seeking to estop the litigation of an issue by reference to a previous adjudication between the parties. To do so, the proponent has the burden of establishing: "(1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue on the prior proceeding was essential to the final judgment or order)." *A.J. Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir.1999) (*citing Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir.1994)); *see also Boston Scientific Corp. v. Schneider AG*, 983 F.Supp. 245, 255 (D.Mass.1997). Collateral estoppel is confined, however, to situations where the matter raised in the second suit is identical in all respects with the one decided in the first suit. *A.J. Faigin*, 184 F.3d at 78 (*citing C.I.R. v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898(1948)). The issues are defined by reference to the judicial determination at stake rather than by the "mere presence of a modicum of factual commonality." *A.J. Faigin*, 184 F.3d at 78.

■ Gonzalez' allegation that his current salary and position do not comply with the terms of the settlement, while brought within the rubric of his new political discrimination claim, appears to be, at best, a belated thinly-veiled attempt to re-open issues that were litigated and decided at the conclusion of *Gonzalez Pina I*. Plaintiff's argument that he was "appointed to a career position but was not given the salary for which he qualified and was given the lowest salary in the scale of retribution for the position [to which] he was appointed" fits squarely within the doctrine of collateral estoppel.

■ The court already determined that appointing Gonzalez to the position of Executive Officer I at a salary greater than $1400 monthly was in compliance with the terms of the 1998 settlement agreement First, it is clear that the issue presently before the Court, whether Gonzalez' appointment to the position of Executive Officer I at a salary higher than $1400 monthly fully complied with the terms and conditions of the settlement agreement reached in open court, is identical to the one resolved at the conclusion of *Gonzalez Pina I. A.J. Faigin*, 184 F.3d at 78. This issue was actually litigated and decided in the Report and Recommendation rendered by the Magistrate Judge and later adopted by the Court. *Id.* It is well-established that the "actually litigated" requirement does not require an evidentiary hearing or trial, but simply that the issue was subject to an adversary presentation and consequent judgment. *Jarosz v. Palmer*, 436 Mass. 526, 766 N.E.2d 482, 488 (2002). Furthermore, the resolution of the issue on *Gonzalez Pina I* was central and essential to the final order. *See Palmer v. Radisson Hotel Int'l*, 45 F.Supp 2d 162, 167 (D.P.R.1999) (Finding an issue is essential if it is logically or practically a necessary component of the decision reached in the prior litigation); *see also Jarosz*, 766 N.E.2d at 489 (stating

that the issue must have a bearing on the outcome or determination of the case to be essential). Gonzalez had a full and fair opportunity to litigate the issue of defendants' compliance with the terms of the stipulations pertaining to his salary and appointment in *Gonzalez Pina I. See Boston Scientific Corp.*, 983 F.Supp. at 256 (*citing DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992)) (Stating that the parties in the first action must have had a full and fair opportunity to litigate the issue). As such, the decision issued by the Court in response to Gonzalez' motion for contempt was final. Despite being a post judgment order, it is well established that the finality requirement for collateral estoppel does not necessitate a final judgment *Tausevich v. Board of Appeals of Stoughton*, 402 Mass. 146, 521 N.E.2d 385, 387(1988)("A final judgment in the traditional sense is not essential to the applicability of issue preclusion"). Rather, it requires that the earlier adjudication is sufficiently firm to be accorded conclusive effect. *Tausevich*, 521 N.E.2d at 387. Factors to determine finality include whether "the parties were fully heard, the judge's decision is supported by a reasoned opinion and the earlier opinion was subject to review or was in fact reviewed." *Id.; see also Jarosz*, 766 N.E.2d at 489. *See also American Casualty Co. of Reading, Pa. v. Sentry Fed. Savings Bank*, 867 F.Supp. 50, 56 (D.Mass.1994) (stating that finality for purposes of issue preclusion means little more than that the litigation of a particular issue has reached such a stage that the court sees no really good reason to permit it to be litigated again). All these circumstances were present in the case of the Magistrate Judge's Report in *Gonzalez Pina I.*

The Magistrate Judge's Report and Recommendation on Gonzalez's motion to find defendants in contempt in *Gonzalez Pina I* for failing to comply with the terms of the settlement agreement clearly decided that the position of Executive Office I fulfilled defendants' obligation with the terms and conditions of the settlement. The opinion specifically stated that "the stipulated terms do not specify or require that plaintiff be appointed to a position in accordance with his academic background and /or experience." The Court found that the settlement agreement reached in open court only required that Gonzalez be appointed to a career position and be afforded a salary for which he qualified, never to be less than $1400 monthly. The Magistrate Judge reasoned that in the absence of specific language in the agreement requiring defendants to fulfill more specific requirements related to Gonzalez's salary, his appointment to a career position earning no less that $1,400 met the salary specifications embodied in the agreement and constituted substantial compliance with the terms of the stipulation (See Docket No. 43, Exhibit D at p. 9). The admitted facts reveal that Gonzalez is currently assigned to the position of Executive Officer I with a monthly salary of $1,645, thus, defendants remain in compliance with the terms of the settlement agreement.

In addition to finding that collateral estoppel is applicable to the issue of the appropriateness of Gonzalez's appointment and salary, the Court is also guided by a consideration of equity. "Equity, after all, ministers to the vigilant, not those who slumber upon their rights." *Bravo Perazza v. Puerto Rico*, 218 F.Supp.2d 176, 181 (D.P.R.2002) (*citing Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 87 (1st Cir. 1990)). Here, Gonzalez had the opportunity to object to the Magistrate Judge's finding prior to it becoming a final order five years ago. Gonzalez failed to object to the Magistrate Judge's Report and Recom-

mendation issued on August 19, 1998 before the Court adopted the same as its own on September 10, 1998 and the decision became binding. He also failed to appeal once the district court adopted the Report. His allegation that he was not paid the salary for which he qualified but rather the lowest possible salary for the position of Executive Officer I is a clear attempt to relitigate an adjudicated matter and cure his own failure to object to the Court's findings back in 1998. His attempt to circumvent the court's earlier finding is untenable. The court is persuaded that Gonzalez had a fair and full opportunity to litigate the issue as to compliance with the terms of the settlement in *Gonzalez Pina I*.

### C. First Amendment

■ It is well established that political patronage restrains core activities protected by the First Amendment, such as the freedom of belief and association. *Padilla-Garcia v. Rodriguez*, 212 F.3d 69, 74 (1st Cir.2000); *Berrios-Cintron v. Cordero*, 976 F.Supp. 110, 113 (D.Puerto Rico 1997). "The Supreme Court has held that the first amendment protects non policy makers from being drummed out of public service on the basis of their political affiliation or advocacy of ideas." *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 56 (1st Cir.1990) (*citing Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)); *Padilla-Garcia*, 212 F.3d at 74; *see also Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

■ A two-part burden shifting framework is used to evaluate claims of political discrimination. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Padilla-Garcia*, 212 F.3d at 74. First, a plaintiff must establish a *prima facie* case of political discrimination by producing sufficient direct or circumstantial evidence to raise the inference that his political affiliation was a substantial or motivating factor behind the challenged adverse employment action. *Padilla-Garcia*, 212 F.3d at 74; *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993); *Rivera-Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994).

■ Evidence of a highly charged political environment coupled with the parties' competing political persuasions may be sufficient to show discriminatory animus, especially in an instance where a plaintiff was a conspicuous target for political discrimination. *Rodriguez-Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir.1998); *Acevedo-Diaz*, 1 F.3d at 69. Nonetheless, "merely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." *Correa-Martinez*, 903 F.2d at 58; *see also Rivera-Cotto*, 38 F.3d at 614 ("Without more, a non moving plaintiff-employee's unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment"). What is required is a fact specific showing that a causal connection exists that links the adverse employment action to the plaintiff's politics. *Correa-Martinez*, 903 F.2d at 58. The plaintiff must raise a plausible inference that he was subjected to discrimination on the basis of his political views or affiliation. *Id.*

■ Once the plaintiff establishes his *prima facie case*, the burden then shifts to the defendant, who must establish by a preponderance of the evidence, that he would have taken the same action regardless of the plaintiff's political beliefs. *Padilla-Garcia*, 212 F.3d at 74. In addition to articulating a nondiscriminatory ground for the adverse employment action, the

defendant bears the burden of proving that he would have taken the adverse employment action regardless of plaintiffs' political affiliation. *Acevedo–Diaz*, 1 F.3d at 66.

In his opposition to summary judgment, Gonzalez states that "there are many issues of material facts (sic) in this case and specifically regarding plaintiffs' harassment claims in regard that they were deprived of their duties and by(sic) been told not to go to offices because he was not welcome and by not permitting him to see his personal files when he needed to prepare his case." (See Docket No 37 at page 7). As a preliminary matter, Gonzalez fails to properly articulate which employment related actions he believes were discriminatory. As noted before, the alleged contested facts provided by plaintiff, have vague and generalized references to the record. The text of his opposition fails to analyze or discuss how the facts alleged satisfy Gonzalez's burden to meet his prima facie case.

Many of the facts and allegations Gonzalez presents in support of his political discrimination claim have been rendered moot by the discussion on collateral estoppel. In his deposition, Gonzalez claims that an announcement in October of 1997 stating the availability of a position for Executive Officer IV at a salary of $1700 monthly was subsequently withdrawn. He states that several of his requests for reclassification to Executive Officer VII have been denied and that he was not considered for other positions within the Municipality. In sum, Gonzalez alleges his duties are not proper for someone with his preparation and experience. As previously discussed, Gonzalez's appointment at the level and salary which he currently enjoys has been deemed to be in compliance with the settlement of *Gonzalez Pina I*. Even if the Court were allowed to consider this evidence, Gonzalez has not provided any evidence to indicate that political animus guided these decisions.

The Court finds that the evidence proffered by Gonzalez, after the exclusion of all the arguments which have been dispensed with on collateral estoppel grounds, is clearly insufficient to meet his prima facie case. Gonzalez' main allegation is that, despite having been appointed to a career position, his supervisors failed to assign him any duties or responsibilities upon his return to the Municipality, and merely asked for his help on certain discrete tasks and projects (*See* Docket No 37, Exhibit 5 at 37–41). He alleges that defendants kept him from performing any real work and that they intensified a pattern of harassment against him. Yet, Gonzalez admits that he never requested any duties, communicated to the Human Resources department that he was without duties or apprised Rodriguez as to his situation (*See* Docket No 37, Exhibit 5 at 40). Gonzalez appears to intertwine his lack of duties allegation with his contention that he is due a better position with an increased salary (Exhibit 6 at 43).

In his deposition, Gonzalez alleges that he was restricted access to information and that the Mayor and others refused to speak with him. He claims to have encountered many roadblocks that would prevent him from gaining access to people and information. He states that many supervisors stated that he was a problematic employee (*see* Docket No. 37 Exhibit 3 at 58–60) and that others allegedly told him that nobody wanted him to have access to information. (*see* Docket No. 37, Exhibit 7 at 73; Exhibit 8 at 75). Gonzalez, however, cannot specify who made the comments, when or why, but that he presumes that orders came directly from Mayor Rodriguez. Notwithstanding, he is unable to link Rodriguez to any of the allegedly

discriminatory practices he complains of. His only assertion as to Rodriguez personally is that at a Christmas party he attempted to speak with him and Rodriguez simply responded that there was nothing to talk about (*see* Docket No. 37, Exhibit 7 at 73). Gonzalez's bare allegations are insufficient to meet his prima facie case. He presents no corroborating evidence to indicate that these events took place or that they were somehow related to his lack of political support for Rodriguez, the earlier case or in some other way motivated by political animosity. Without more, the court cannot infer that political discrimination was a substantial or motivating factor in Gonzalez's situation at the Municipality.

Accordingly, the Court dismisses Gonzalez' first amendment claims.

### D. Due Process

■ Gonzalez also claims a due process violation. The Due Process Clause guarantees public employees the right to a pre-termination hearing. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). As a prerequisite to a due process claim, however, Gonzalez must have a constitutionally cognizable property or liberty interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Correa–Martinez,* at 53 (*citing Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

■ A plaintiff who claims he was terminated without due process of law must first show that she was terminated. An employee who has not been terminated has not lost a property interest and therefore cannot claim a violation of his due process rights. *Morales–Narvaez v. Rossello,* 852 F.Supp. 104, 113 (D.P.R.1994) (*citing Rodriguez Pinto v. Tirado Delgado,* 798 F.Supp. 77, 83 (D.P.R.1992) *aff'd on this ground* 982 F.2d 34, 41 (1st Cir.1993)); *see*

*also Santiago v. Fajardo,* 70 F.Supp.2d 72, 74 (D.P.R.1999) (finding that a suspension without pay was not equal to a termination for plaintiff's equal protection rights to be triggered). Gonzalez has not shown that he was terminated or that he suffered an adverse employment action tantamount to a termination. *Ziskend v. O'Leary,* 79 F.Supp.2d 10 (D.Mass.2000). The admitted facts reveal that Gonzalez continues to be employed at the municipality. Since the Municipality did not terminate Gonzalez's employment (or otherwise acted in a way that impinged on any alleged property interest), it did not need to provide him with due process. Accordingly, Gonzalez's due process claims are hereby dismissed with prejudice.

### CONCLUSION

For the reasons set forth above, defendants' Motion for Summary Judgement is GRANTED (Docket No. 37). Judgment shall enter accordingly dismissing all federal claims with prejudice. The state law supplemental claims shall be dismissed without prejudice

IT IS SO ORDERED.