# United States Court of Appeals
## For the First Circuit

No. 04-1603

ERNESTO GONZÁLEZ-PIÑA,

Plaintiff, Appellant,

v.

JOSÉ GUILLERMO RODRÍGUEZ,
Mayor of the City of Mayagüez; City of Mayagüez,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella and Howard, Circuit Judges,
and Carter,[*] Senior District Judge.

Israel Roldán-González, on brief, for appellant.
Juan Rafael González-Muñoz, with whom González-Muñoz Law
Offices, Glorianna S. Hita-Valiente, Carlos E. López-López and
Llovet Zurinaga & López, PSC, were on brief, for appellees.

May 11, 2005

---

[*] Of the District of Maine, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>. Plaintiff-appellant Ernesto González-Piña ("González") brought suit against the Municipality of Mayagüez and its Mayor, José Guillermo Rodríguez, (collectively "Defendants"), under 42 U.S.C. § 1983, the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and various state laws, as a result of political discrimination. González alleged that after his earlier suit against Defendants and his subsequent reinstatement, Defendants have consistently denied his reclassification to a higher position and have given him no meaningful duties. The district court granted summary judgment for Defendants, finding that some of González's allegations were barred by collateral estoppel and that the remaining facts, if credited, were insufficient to support a prima facie case of political discrimination. The court also denied González's subsequent motion for reconsideration on the basis of new evidence. González appeals both decisions, and after careful review, we affirm.

## I. Background

On September 22, 1997, the parties settled González's initial political discrimination suit in open court. The parties failed to file written stipulations of their settlement agreement; thus, the court entered judgment with reference to the terms stipulated in open court.

The settlement agreement obliged the municipality to pay González $61,200 in back pay, including benefits, and to appoint

him to a new career position with a salary "for which he qualifies which will never be less than $1,400 monthly." In turn, González agreed to retire upon completion of thirty years of service, which he estimated to be within two years of the settlement date. The Municipality subsequently appointed González to a new position as Executive Officer I with a $1,500 monthly salary.

On February 5, 1998, González petitioned for Defendants to be held in contempt for failing to comply with the terms of the settlement agreement. González alleged, in relevant part, that Defendants refused to appoint him to the position and salary for which he qualified: Executive Officer VII.

A magistrate judge denied González's motion for contempt on August 20, 1998. In his Report and Recommendation, the magistrate judge found that Defendants had substantially complied with the terms of the settlement agreement by appointing González to Executive Officer I. González did not object to the Report and Recommendation, which the district court adopted on September 10, 1998. González-Piña v. Rodríguez, No. 95-1527 (D.P.R. Sept. 11, 1998) ("González-Piña I"). No appeals were taken from that judgment.

González filed the instant case on August 2, 2001, alleging § 1983, due process, and state law violations. In a nutshell, Defendants allegedly (1) failed to appoint him to a position and salary commensurate with his qualifications, and (2)

-3-

harassed and deprived him of duties and responsibilities. These actions, González alleged, were done in retaliation for his support of the Mayor's opponent during the 1994 primaries.

Defendants moved for summary judgment on April 25, 2003. Shortly thereafter, on May 12 and May 15, Defendants announced two new witnesses. González filed a motion opposing summary judgment on May 16, and Defendants replied on May 22. The parties deposed the new witnesses on July 23, 2003, but neither party raised the evidence gleaned from these depositions during the pendency of the summary judgment motion.

On August 7, 2003, the district court issued an Opinion and Order granting summary judgment for Defendants. First, the court found that res judicata did not bar González's claims to the extent that they were based on new conduct occurring after his return to work. However, González's claims regarding Defendants' failure to employ him at a higher position -- in alleged violation of the settlement agreement -- were held barred by collateral estoppel. This issue had been fully and finally litigated in González-Piña I, which determined that the Executive Officer I position, which had a salary greater than $1,400 per month, complied with the settlement agreement. Moreover, the court found that equity weighed in favor of collateral estoppel's application, as González failed to object to the magistrate judge's finding and the district court's adoption of that finding.

Second, the court held that González's remaining claims -- harassment and lack of work -- were not supported by sufficient evidence to establish a prima facie case of political discrimination in violation of the First, Fifth or Fourteenth Amendment. In so holding, the court found, inter alia, that (1) González admitted that he did not request duties or appraise the Human Resources Director or the Mayor of his lack of duties, (2) González failed to specify who made comments to him that he was viewed as a problematic employee and was not to have access to his employment information, and (3) González failed to link the Mayor to any of the alleged discriminatory practices. Since González failed to provide sufficient evidence for the court to infer that political discrimination was a substantial or motivating factor in his treatment, the court granted summary judgment for Defendants.

On August 18, 2003, González filed a motion to reconsider, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(2), based on new evidence from the July 23, 2003 deposition of defense witnesses. A deposition witness, who temporarily served as González's supervisor, apparently stated that González told her that he had no assignments and had nothing to do in the office. The witness also indicated, in a somewhat confused exchange with counsel, that González had not been assigned tasks between 1999 and 2000, but was assigned tasks in 2000. The court denied the motion to reconsider on March 31, 2004.

González appeals, arguing that the district court erred in (1) applying res judicata and collateral estoppel, (2) determining that he failed to establish a prima facie case of political discrimination, and (3) denying his motion to reconsider based on new evidence. We address these issues in turn.

## II. Analysis

### A. Res Judicata and Collateral Estoppel

González first argues that the district court erred in applying res judicata and collateral estoppel in dismissing his political discrimination claims. We disagree.

Res judicata is an issue of law over which this court exercises plenary review. Pérez-Guzmán v. Gracia, 346 F.3d 229, 233 (1st Cir. 2003). Under this doctrine, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004) (citation omitted). Specifically, res judicata applies when the following exist: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." Id. This doctrine, also known as claim preclusion, serves the purpose of "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and . . .

encourag[ing] reliance on adjudication." Id. (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

Here, the district court allegedly erred in applying res judicata because the instant allegations of political discrimination involve subsequent conduct, and thus lack "sufficient identicality of causes of action" with the earlier suit. Specifically, González argues that Defendants' post-reinstatement harassment and failure to assign work constitute "[s]ubsequent conduct, [that,] even if it is of the same nature as the conduct complained of in a prior lawsuit, may give rise to an entirely separate cause of action." Kilgoar v. Colbert County Bd. of Educ., 578 F.2d 1033, 1035 (5th Cir. 1978) (internal quotation omitted). On this point, we agree, and apparently so did the district court, which found that "González's claim of political discrimination is not precluded on new conduct occurring after his return to the Municipality." González-Piña v. Rodríguez, 278 F. Supp. 2d 195, 201 (D.P.R. 2003). González simply misunderstood the district court's holding on res judicata, which was correct as a matter of law. See, e.g., Walsh v. Int'l Longshoremen's Ass'n, AFL CIO, Local 799, 630 F.2d 864, 873 (1st Cir. 1980) (recognizing that res judicata did not bar "subsequent conduct [that] was broader and more farreaching than the conduct which led to the original complaint").

Neither do we find fault in the court's collateral estoppel analysis. Collateral estoppel, like res judicata, is an issue of law which we review de novo. Faigin v. Kelley, 184 F.3d 67, 78 (1st Cir. 1999). To establish collateral estoppel, the following factors must be met:

> (1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was essential to the final judgment or order).

Id. In short, collateral estoppel, also known as issue preclusion, "'means simply that when a[n] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" Jackson v. Coalter, 337 F.3d 74, 85 (1st Cir. 2003) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)).

In the instant case, the district court correctly concluded that all of González's claims regarding inadequate pay or position, as well as any other claim of noncompliance with the settlement agreement, are precluded by collateral estoppel. As a result of González's contempt petition, the magistrate judge -- whose findings were adopted by the district court and were not

appealed -- held that Defendants substantially complied with the settlement agreement. Specifically, the judge found that the Executive Officer I position at $1,500 per month salary satisfied the settlement agreement's terms: a position with a salary "which will never be less than $1,400 monthly." Since this issue of ultimate fact has been determined by a valid and final judgment, the court correctly foreclosed relitigation of this issue and any of its derivatives under collateral estoppel, even if framed under a different cause of action.[1]

We therefore affirm the district court's holding on res judicata and collateral estoppel.

## B. **Sufficiency of Evidence**

González further argues that the court erred in granting summary judgment for Defendants due to his failure to establish a

---

[1] We note that the court may have gone too far in barring under collateral estoppel any evidence of González's failed attempts to be reclassified to higher positions. While the prior adjudication on the settlement agreement would preclude claims that the failure to promote González to a higher position or salary violated the agreement, it is unclear whether it would preclude a separate claim of discrimination for, as an example, failure to promote González to a position for which a less-qualified applicant was hired. There appears to be no identity of issues in such a case, since the former pertains to compliance with the settlement agreement, while the latter pertains to discriminatory promotion practices. Nonetheless, the contractual nature of the settlement agreement may have bound González to accept any position that met its minimal requirements. As the magistrate judge noted, "the stipulated terms do not specify or require that plaintiff be appointed to a position in accordance with his academic background and/or experience." Moreover, since González failed to raise this argument on appeal, we deem it waived. See, e.g., García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 645 (1st Cir. 2000).

prima facie case of political discrimination under the First Amendment. This argument also fails.

We review grants of summary judgment de novo, viewing all facts in the light most favorable to the nonmoving party and granting all reasonable inferences in that party's favor. See, e.g., Torres v. E.I. Dupont Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). Such judgments will be upheld "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party "must present definite, competent evidence to rebut the motion," Mesnik v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991); otherwise, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," Rivera-Cotto v. Rivera, 38 F.3d 611, 613 (1st Cir. 1994) (internal quotation omitted). "The mere existence of a scintilla of evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

It is beyond peradventure that the First Amendment protects "non-policymaking" public employees from adverse employment actions based on their political affiliation or opinion. See, e.g., Rutan v. Republican Party of Ill., 497 U.S. 62, 74-76

-10-

(1990); Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51-52 (1st Cir. 2005). To establish a prima facie case of political discrimination, plaintiffs must first show that party affiliation was a substantial or motivating factor behind an adverse employment action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); see also Mercado-Alicea, 396 F.3d at 51. In political discrimination claims involving changed work conditions, this court has held that plaintiffs must establish by clear and convincing evidence that their work situation is "unreasonably inferior" to the norm, and then persuade, by a preponderance of the evidence, that political affiliation motivated the adverse employment action. See Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217-20 (1st Cir. 1989) (en banc).[2] The burden then

_____

[2] Subsequent to Agosto-de-Feliciano, the Supreme Court held that certain deprivations less harsh than dismissal -- "promotions, transfers, and recalls after layoffs based on political affiliation or support [--] are an impermissible infringement on the First Amendment rights of public employees." Rutan, 497 U.S. at 75. In so holding, the Court noted that any adverse action against public employees, no matter how minor, infringes First Amendment rights. See id. at 76, n.8 ("[T]he First Amendment . . . already protects state employees not only from patronage dismissals but also from even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights") (internal quotation marks and citation omitted). Thus, we have questioned whether Rutan effectively overruled Agosto-de-Feliciano, particularly its so-called "changeover" defense. See Rodríguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 42 (1st Cir. 1993) (Torruella, J., concurring). Although subsequent First Circuit decisions do not regard Rutan as necessarily foreclosing the "unreasonably inferior" standard of Agosto-de-Feliciano, they leave unresolved any conflict in such standard. See, e.g., Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101 (1st Cir. 1997); Ortiz García v. Toledo Fernández,

-11-

shifts to the employer, under the "Mt. Healthy defense," to establish by a preponderance of the evidence that it would have taken the contested action regardless of the employee's political affiliation. Mt. Healthy, 429 U.S. at 287.

In the instant case, we recognize that González identified more specific facts of adverse employment action than perhaps suggested by the district court. In his deposition, González indicated (1) that he was given no assignments between his post-settlement reinstatement in February 1998 and February 2000; (2) that he had complained to the Finance Director about his lack of duties and was told that they were tired of his constant communications; (3) that a Human Resources employee complained about his constant visits; (4) that a recently vacated position was eliminated shortly after he submitted his application for that position; and (5) that he was refused access to his personnel files. The Mayor, in his deposition, also stated that although González had approached him about his lack of duties, he had no time to read employee complaints and act on them because of his mayoral duties. We find that these facts are specific enough to amount to more than a "mere scintilla" of evidence. See Liberty Lobby, 477 U.S. at 252.

---

-- F.3d --, 2005 WL 894470 at *5, n.4 (1st Cir. Apr. 19, 2005). Nonetheless, since any such conflict has no impact on our holding, we save that question for another day.

We need not decide, however, whether González established such "unreasonably inferior" conditions. Since González failed to show that the adverse employment decisions were motivated by political animus, this ends our inquiry. We agree with the district court's finding that González failed to link defendant Mayor to any of the alleged discriminatory practices. See González-Piña, 278 F. Supp. 2d at 205. The only assertion regarding the Mayor personally is that González attempted to speak with him at a Christmas party and was told that they had nothing to talk about. Id. at 206. González presents no corroborating evidence that the alleged events took place or were related to his lack of political support for the Mayor or the earlier suit, or were in any other way motivated by political animus. González's support for a rival mayoral candidate in the primary, even if the Mayor was aware of such support, is by itself insufficient to establish political animus. See, e.g., Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000) (a showing of political animus "requires more than merely 'juxtaposing a protected characteristic -- someone else's politics -- with the fact that plaintiff was treated unfairly'") (citation omitted).

In the absence of any evidence of political motivation, González cannot meet his burden to show a prima facie case of political discrimination. We therefore affirm on this issue.

-13-

## C. __New Evidence__

After the district court entered summary judgment for Defendants, González filed an unsuccessful Rule 60(b) Motion for Relief from Judgment based on "newly discovered evidence." Fed. R. Civ. P. 60(b). Since we find no abuse of discretion by the district court, we affirm.

"[R]elief under Rule 60(b) is extraordinary in nature and . . . motions invoking that rule should be granted sparingly." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002). We will not overturn denials of such motions unless "a miscarriage of justice is in prospect or the record otherwise reveals a manifest abuse of discretion." Ruiz-Rivera v. Riley, 209 F.3d 24, 27 (1st Cir. 2002); see also Appeal of Sun Pipe Line Co., 831 F.2d 22, 25 (1st Cir. 1987) ("We have repeatedly held that, once the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory.").

Rule 60(b) provides that a "court may relieve a party . . . from a final judgment, order, or proceeding" based on, inter alia, "newly discovered evidence which by due diligence could not have been discovered in time . . . ." Fed. R. Civ. P. 60(b)(2). Under this rule, a party moving for relief from summary judgment must persuade the district court that it meets all of the following Mitchell requirements: "(1) the evidence has been discovered since

the trial; (2) the evidence could not by due diligence have been discovered earlier by the movant; (3) the evidence is not merely cumulative or impeaching; and (4) the evidence is of such a nature that it would probably change the result were a new trial to be granted." U.S. Steel v. M. DeMatteo Const. Co., 315 F.3d 43, 52 (1st Cir. 2002) (citing Mitchell v. United States, 141 F.3d 8, 18 (1st Cir. 1998). Although the movant in the instant case seeks relief from summary judgment rather than a trial, the "standard for relief under Rule 60(b)(2) is equally applicable to evidence discovered after a summary judgment." U.S. Steel, 315 F.3d at 52 n.9.

Here, the fact that the depositions and the evidence discovered therein were taken fourteen days prior to summary judgment quickly disposes of this issue: it fails the first Mitchell requirement that the evidence be discovered after the district court's entry of summary judgement. See also U.S. Steel, 315 F.3d at 52 (finding that a party is not entitled to relief under Rule 60(b)(2) where it possessed records containing evidence prior to the summary judgment hearing but failed to review them). This requirement is closely related to the second Mitchell requirement of due diligence. "[A] party who seeks relief from a judgment based on newly discovered evidence must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the

-15-

proceedings." <u>Karak</u>, 288 F.3d at 19-20. We find no convincing explanation in this case. González was aware of the deposition's contents by July 23, 2003, and also knew that a summary judgment motion has been pending against him for several months. Yet for fourteen days, he failed to bring evidence gleaned from the depositions to the court's attention, and instead prepared for jury selection that was to begin on August 8, 2003.

González nonetheless attempts to salvage his failure to satisfy <u>Mitchell</u> by proffering an equitable argument: that the depositions were agreed upon by both parties. We find no case law providing for such an exemption, and could conceive of no compelling reason to do so now. "Equity, after all, ministers to the vigilant, not those who slumber upon their rights." <u>Sandstrom</u> v. <u>ChemLawn Corp.</u>, 904 F.2d 83, 87 (1st Cir. 1990). Although the parties' agreement to the deposition might have given González cause to believe that the summary judgment would not be acted upon, he nonetheless possessed the information and could have informed the court.

Since González failed to meet his burden of proving the first and second <u>Mitchell</u> criteria, we find no abuse of discretion in the district court's denial of his Rule 60(b)(2) motion.

The district court's judgments are **<u>affirmed</u>**.