Javier AVLIES ALICEA,
et al., Plaintiffs

v.

MUNICIPO DE SAN JUAN,
et al., Defendants.

Civil No. 04–1602 (ADC).

United States District Court,
D. Puerto Rico.

Sept. 28, 2007.

Antonio Moreda-Toledo, Moreda & Moreda, Irma R. Valldejuli-Perez, San Juan, PR, for Plaintiffs.

Ricardo Pascual-Villaronga, Mercado & Soto, Antonio Montalvo-Nazario, San Juan, PR, for Defendants.

### ORDER

AIDA M. DELGADO–COLON, District Judge.

Plaintiff, Javier Avilés–Alicea ("Avilés" or "Plaintiff"),[1] filed this political discrimination lawsuit pursuant to 42 U.S.C. § 1983 against the Municipality of San Juan ("City") and its mayor, the Hon. Jorge Santini ("Santini"), José De Miranda ("De Miranda" hereafter "Defendants") in their official and personal capacities.[2] Plaintiff, a member of the Popular Democratic Party ("PDP") alleges, in substance, that he was transferred from his position as a administrator of the open air market called, Plaza del Mercado in Santurce ("Santurce Market") to a position with lit-

---

1. Also included as co-plaintiffs is his wife, Nélida Ramírez–Ruiz, the Conjugal Partnership formed between them, and their children. **(Docket No. 1)**.

2. Defendant, Rafael Matos ("Matos") was also named in the complaint and has not appeared in this action. A default judgment was entered against him on November 22, 2006. **(Docket No. 68)**.

tle or no responsibilities at similar market called Centro Pesquero ("Fisherman's Center") because of his political affiliation. (**Docket No. 1**).

Now before the Court is Plaintiff's objection (**Docket No. 62**) to the Report and Recommendation ("R & R") issued by the Magistrate, Camille L. Vélez–Rivé ("Magistrate–Judge") on June 30, 2006, which recommended granting Defendants' Motion For Summary Judgment. (**Docket Nos. 35, 60**). Plaintiff presents two principal objections to the Magistrate–Judge's R & R. First, Plaintiff argues that the Magistrate–Judge's reliance on the fact that he never conducted political activities while at work in recommending granting summary judgment was improper. (**Docket No. 62 at 2**). Second, Plaintiff points out that the Magistrate–Judge's finding of conflicting testimony as to whether Plaintiff's transfer was politically motivated precludes the dismissal of his claims *Id.* at 3. The Court address each argument in turn.

Also before the Court is Defendants' partial objection to the R & R on the grounds that it should have recommended dismissal of the claims brought pursuant to 42 U.S.C. § 1981. (**Docket No. 63**).

After reviewing the R & R and specific objections thereto, the Court **adopts** the R & R and grants summary judgment in favor of Defendants. Each of the parties objections will be addressed by means of an Opinion and Order to follow.

**SO ORDERED.**

**REPORT AND RECOMMENDATION**

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiffs Javier Avilés–Alicea ("Avilés"), Nélida Ramírez–Ruiz, the Conjugal Part-

nership of Avilés–Ramírez, Jeanevy Avilés–Ramírez and Alexandra Marie Avilés–Ramírez filed this civil rights action against the Municipality of San Juan, Mayor Jorge Santini ("Mayor Santini"), José De Miranda ("Mr. De Miranda") and Rafael Matos ("Mr.Matos"), in their official and personal capacities. Plaintiffs claim Avilés was subject to political discrimination and, thus, invoke the jurisdiction of this federal forum pursuant to 42 U.S.C. §§ 1981 and 1983, as well as for violation of their First, Fifth and Fourteenth Amendments of the United States Constitution and pendent supplemental jurisdiction under the laws of Puerto Rico. (**Docket No. 1**).

Defendants Municipality of San Juan, Mayor Santini and Mr. De Miranda [1], filed a motion for summary judgment predicated on plaintiffs' lack of evidence to show a substantial or motivating factor behind any adverse personnel action to support their claim of political discrimination (**Docket No. 35**). The motion included defendants' Statement of Uncontested Facts and documents attached thereto, including translations to the English language. (**Docket No. 36**). Defendants claim the reason for the relocation of Avilés from the Plaza del Mercado in Santurce, Puerto Rico to the Centra Pesquero was due to necessities of service and to a re-organization. Defendants also aver plaintiffs would not be able to show at trial a substantial or motivating factor behind the employment action was because of political motivation. In sum, defendants request summary judgment in their favor as to the claims under § 1983 claims, Law No. 100 and pendent state claims under Article 1802 of the Puerto

---

**1.** Co-defendant Mr. Matos has failed to appear in this case after being served by publi-

cation. Nonetheless, plaintiffs have failed to request the entry of default against Mr. Matos.

Rico Civil Code.[2]

On March 22, 2006, plaintiffs filed their Opposition to Motion for Summary Judgment (**Docket No. 45**) along with a Statement of Contested Material Facts (**Docket No. 46**). Plaintiffs claim there was no need for an immediate transfer of Avilés to the Centro Pesquero where the working conditions were inferior to the working conditions of other municipal employees and that defendants discriminated against Avilés for political reasons.

These motions were referred to this Magistrate Judge for report and recommendation (**Docket Nos. 38 and 50**).

## II. UNDISPUTED FACTS

Plaintiff Avilés has a B.A. He has been working at the Municipality of San Juan for over twenty (20) years as a career employee. Since 1999 Avilés has occupied the position of Installation Administrator II and he was the administrator of the Plaza del Mercado in Santurce.

Article XIV(C) of the Bill or Rights of the Municipality of San Juan Executive Order No. JS–003, Series 2003–2004, provides that an employee may be relocated under the same program and under the same position that he or she occupies due to the necessities of service.

On June 24, 2003, Mr. Matos, sub-director of the Municipal Enterprises, informed Avilés that effective July 1, 2003 he would be relocated from Plaza del Mercado in Santurce to the Centro Pesquero due to necessities of service and to a re-organization.

On September 15, 2003, Avilés, through his attorney, sent a letter to defendant Mr. De Miranda, then director of the Municipal

Enterprises, whereby Avilés complained, among others, that the person who replaced him at the Plaza del Mercado was younger than him.

On October 20, 2003, Avilés filed a grievance before the Equal Employment Opportunity Office of the Municipality of San Juan, related to his relocation. The grievance did not mention he was relocated based on his political beliefs nor age.

On March 17, 2004, the Equal Employment Opportunity Office of the Municipality of San Juan issued a final determination dismissing the complaint filed by Aviles on October 20, 2003.

On May 18, 2004, Avilés filed an age discrimination charge against the Municipality of San Juan before the Equal Employment Opportunity Commission ("EEOC").

On May 18, 2004, plaintiff was informed of his duties as an Installation Administration at the Centro Pesquero, in accordance with the recommendation of the Equal Employment Opportunity Office.

On May 18, 2004, Mr. De Miranda assigned to Aviles his duties as Administrator of Installations II. From the duties listed as 1–11 in the communication of May 18, 2004, Avilés accepted doing all of them except # 4, to wit, "compiled information from clients or users related to their satisfaction of the services received." All the duties assigned were listed in Avilés' job description as Installation Administrator II of the Classification Plan of March 1, 1999.

Avilés' relocation from the Plaza del Mercado to the Centro Pesquero did not affect his salary nor his benefits. Avilés

---

2. Defendants did not request summary judgment as to the § 1981 claims, as raised in the Second Cause of Action of the Complaint, for conspiracy to violate plaintiff Avilés' First Amendment constitutional rights. (**Docket No. 1**). Thus, § 1981 claims remain and are not object of this report and recommendation.

had been previously relocated within the Municipality of San Juan due to necessities of service.

Aviles considered the expression made by Mrs. Wanda Olivo in paragraph 3.13 of the Complaint as a personal expression.

Aviles was in agreement with the transfer from the Plaza del Mercado to the Centro Pesquero but he opposes the working conditions at the Centro Pesquero.

Aviles belonged to an "autogestión" program in his neighborhood. Aviles has never been a political activist at work and has never told anyone in the Municipality of San Juan about the "autogestión" program he participated in Caguas. Aviles has never sold political tickets or raffles at work. Aviles does not know whether co-defendant De Miranda knows about his activities in Caguas. Aviles never told co-defendants Mr. De Miranda or Matos nor Heriberto Quiñones (person who replaced him at the Plaza del Mercado) that he was a sympathizer of the Popular Democratic Party ("PPD").

Avilés does not know whether Mayor Santini knows his political beliefs, nor whether the Mayor participated in the decision to transfer him.

On December 23, 2004, the EEOC dismissed Avilés' age discrimination charge.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.RCiv.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material

facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact" *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood...." *Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting sum-

mary judgment. *Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and emphasizing that "determinations of motive and intent ... are questions better suited for the jury") (internal quotation marks omitted) (citation omitted). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

## IV. LEGAL DISCUSSION

### A. First Amendment—Plaintiffs' Constitutional Protection.

█ It is clear non-policymaking public employees are constitutionally protected from adverse employment decisions on account of their political affiliation. *See Rutan v. Repub. Party*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). This constitutional doctrine is premised on the fact that politically motivated discharge infringes on freedom rights protected by the U.S. Constitution, such as the freedom of belief and association encompassed in the First Amendment. *Elrod v. Burns*, 427 U.S. 347, 355–58, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Padilla–García v. Rodríguez*, 212 F.3d 69, 74 (1st Cir.2000).

██ As to the First Amendment protection, when a public employee presents a political discrimination claim against an employer, the court must initially determine whether the plaintiff is the kind of employee whose job enjoys protection against political patronage. *See Branti v. Finkel*, 445 U.S. 507, 517–20, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (*dismissing* of a public employee based solely on political allegiance violates the First Amendment).

This protection extends to public employees who occupy neither policymaking positions nor positions of unusual confidence. *See Vázquez Ríos v. Hernández Colón*, 819 F.2d 319, 322–26 (1st Cir.1987); *Gómez v. Rivera Rodriguez*, 344 F.3d 103, 109–110 (1st Cir.2003). It must be determined also whether a plaintiff was denied, banished from, or suffer adverse employment action in public employment for political reasons.

There is no controversy plaintiff Avilés is a career employee with the Municipality of San Juan and was not a trust or confidence public employee for which political affiliation was not a requirement for the effective performance of the duties of his position. Thus, plaintiff Avilés is a non-policy making employees who, if First Amendment violations were present, would be entitled to protection under an umbrella of constitutional dimensions.

### B. Due Process Claim—Plaintiff's Property Rights.

█ To establish a procedural due process claim, plaintiffs must show they held a property interest as defined by state law and defendants, acting under color of state law, deprived them of their property interest without constitutionally adequate process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Mimiya Hosp., Inc. v. U.S. Dept. of Health and Human Servs.*, 331 F.3d 178, 181 (1st Cir.2003) (*stating* as being well established that individuals whose property interests are at stake are entitled to notice and an opportunity to be heard) (*quoting* from *Dusenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)).

█ Whether or not a position is subject to political discharge is a legal question for the courts. *Flynn v. City of Boston*, 140 F.3d 42 (1st Cir.1998); *Vázquez Ríos*, 819 F.2d at 322–26. As

such, under Puerto Rico law, "career" or regular employees have a property interest in continued employment that would be protected by the due process clause of the Fourteenth Amendment and can only be fired for good cause. U.S. Constitution, Amend. 14.

In the instant case, defendants have not raised any controversy plaintiff Aviles held a regular and/or non-trust position, for which political patronage would not be a requirement to exercise their duties. Thus, there is no further need to discuss plaintiff Aviles is indeed entitled to due process before being deprived of their property right to public employment As previously mentioned, the protection extends to public employees such as herein plaintiffs, who occupy neither policymaking positions nor positions of unusual confidence. *Gómez*, 344 F.3d at 109–110; *Vázquez Ríos*, 819 F.2d at 322–26.

## C. Political Discrimination Claims.

 We must now analyze whether plaintiffs in this case could meet their burden to establish deprivation of their First and Fourteenth Amendment rights. In summary judgment, the burden is similar to judgment as a matter of law in political discrimination claims. *Vázquez Valentín v. Santiago Díaz*, 385 F.3d 23, n. 16 (1st Cir.2004); *Figueroa–Serrano v. Ramos–Alverio*, 221 F.3d 1 (1st Cir.2000).

 In claims of political discrimination in employment, non-policy making employees have the burden to produce sufficient evidence, direct or circumstantial, from which a rational jury could find that their political affiliation was a substantial or motivating factor behind the adverse employment action in other words, establish causation. *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996); *Acevedo–Díaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993). The employer must then articulate a non-dis-

criminatory basis for the adverse employment action and establish, by a preponderance of the evidence, that it would have taken such action without regard to plaintiffs' political affiliation. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The analysis established by *Mt. Healthy* for political discrimination cases passes the burden of persuasion to the defendant-employer once plaintiffs have produced sufficient evidence of a *prima facie* case. In other words, "the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons." *Padilla–García*, 212 F.3d at 77–78. Thus, defendants must persuade the court that the proffered non-discriminatory reason is credible. *Rodríguez Ríos v. Cordero*, 138 F.3d 22, 26 (1st Cir.1998).

On the one hand, plaintiffs' burden under *Mt. Healthy* goes directly to causation. To prevail, they must point to evidence in the record that would "permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically discriminatory animus". *Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994); *Vázquez v. López Rosario*, 134 F.3d 28, 36 (1st Cir.1998). This showing would require more than merely "juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly." *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 58 (1st Cir.1990). *See Rodríguez–Ríos*, 138 F.3d at 26 (*finding* evidence sufficient when demonstrated defendants were politically active and were aware of plaintiff's opposing views).

Thus, to establish a *prima facie* case of political discrimination under the First Amendment, a plaintiff must show he or she engaged in constitutionally protected conduct, and that the conduct was a substantial or motivating factor for an adverse employment decision. See *Padilla–García,* 212 F.3d at 74.

In the present case, plaintiffs have not presented enough evidence to meet their burden of establishing a *prima facie* case.

A review of the record shows the following facts are undisputed pursuant to plaintiff's own testimony at his deposition held on October 12 and 14, 2005: Aviles belonged to an "autogestión" program in his neighborhood which benefits all the community; Avilés has never been a political activist at work and has never told anyone in the Municipality of San Juan about the "autogestión" program he participated in Caguas; Avil has never sold political tickets or raffles at work; Avilés does not know whether co-defendant Mr. De Miranda knows about his political activities in Caguas; Avilés never told co-defendants Mr. De Miranda or Mr. Matos that he was a sympathizer of the PPD; Avilés does not know whether Mayor Santini knows his political beliefs, nor whether the Mayor participated in the decision to transfer him. (*Avilés' depo. 10/14/05, pp. 23–25, 28–29, 32 and 33* ).

Plaintiff specifically testified during his deposition he was not a political activist at work. (*Id., p. 28* ). Plaintiff stated that "I contribute when there is the opportunity of doing so, when there is that thing of, you know, being able to buy rickets in order to contribute to the party [PPD], **but that is done outside my work hours. It has nothing to do with my job.**" (Emphasis added) (*Id.*).

In addition, during plaintiff's deposition he was asked whether he was "the kind of person that in the municipality you tell everyone what are your political beliefs to everyone?", to which plaintiff answered; "When people speak to me about politics we each make our point clarifying where we each stand. I want to clarify that I have been at the fund raising activities of the candidate Bhatia, and I have taken steps to take part in it, **but not at work.**" (Emphasis added). (*Id., p. 30* ).

Plaintiff also testified during his deposition he has been active and participated in political activities for Mayor candidate Eduardo Bhatia; he sold tickets for the PPD, collected monies for the PPD and participated in caravans. Plaintiff Avilés sometimes did the job of coordinating in the political activities. (*Id., pp. 30–31 and 35* ).

Further, Mr. Luis A. Negrón ("Mr. Negrón") and Mr. Manuel Matos Matos ("Matos Matos"), co-workers of Aviles who are witnesses on his behalf in this case, testified during their depositions they did not know the reasons for Aviles' transfer. Both witnesses admitted Avilés' political beliefs were not known at his workplace.

Mr. Negrón stated during his deposition he does not know the motives for Avilés transfer from the Plaza del Mercado in Santurce to the Centra Pesquero nor did Avilés told him of the reasons. Mr. Negron was aware of Aviles' affiliation to the PPD because they had talked about it. Mr. Negrón indicated Aviles never held political activities at the Plaza del Mercado and admitted Aviles' political beliefs were not of common knowledge in the Plaza del Mercado in Santurce. (*Mr. Negrón's deposition, pp. 23–25 and 28* ).

Mr. Matos Matos testified during his deposition Aviles never told him he thought he was transferred due to his political affiliation. Mr. Matos Matos does not know if plaintiff is a political activist and never heard that within the municipal-

ity. Mr. Matos Matos does not know if plaintiff's transfer was based on political beliefs. Mr. Matos Matos indicated no one in the municipality knows of plaintiff's political beliefs and stated plaintiff is not the kind of person to be informing to everyone in the municipality his political beliefs. (*Mr. Matos Matos' depo, pp. 10–11, 14–15* ).

The credible evidence on record above summarized (including the testimonies of plaintiff Aviles' own witnesses) shows plaintiff Aviles was not politically active at work and plaintiff Aviles' political affiliation was not know at his workplace. In fact, Aviles admitted during his deposition that he never told co-defendants Mr. De Miranda or Mr. Matos that he was a sympathizer of the PPD and he does not know whether Mayor Santini knows his political beliefs, nor whether the Mayor participated in the decision to transfer him.

Thus, plaintiff Avilés has failed to establish he was engaged in a protected conduct at his workplace and that defendants were aware of his political beliefs. We also note plaintiffs have failed to establish that defendants were politically active and were members of the opposing party.[3]

Moreover, plaintiff Avilés has failed to show the second part of the *prima facie* threshold, namely, that the challenged personnel action occurred and stemmed from a politically based discriminatory animus. *See Rivera–Cotto*, 38 F.3d at 614. To this effect, plaintiff has failed to point to evidence in the record that would permit a rational fact finder to so conclude.

Plaintiffs base their allegation that the transfer in question was based on plaintiff Avilés' political beliefs on the following factual scenario summarized in their Opposition to the summary judgment request (**Docket No. 46, p. 8**):

In addition, just before the transfer was announced, Luis Negron Rodriguez, a Santurce Marketplace merchant and President of the Santurce Marketplace Merchants Association, Exhibit 6, pps. 8–9, told him [plaintiff] that he [Negron] was at a meeting that took place in the business place of Mijani owned by Nilsa Moran, an activist of the New Progressive Party ("NPP"), wherein there were Municipal Coronel Mercado and defendant Rafael Matos and they indicated that they were going to be moving the plaintiff within thirty days and going to put somebody of their "administration" in his place. *Exhibit 5, pps. 39–41; Exhibit 6, pps. 29–30.*

This factual scenario is in agreement with Mr. Avilés testimony during his deposition that Mr. Negron told him that "he [Mr. Negrón] had found out that Mr. [Rafael] Matos and Mr. Colonel Mercado held a meeting in which they indicated that they were going to be moving me within thirty days and **going to put somebody of their administration in my place.**" (*Avilés' depo. 10/14/05, p. 39* ). (Emphasis added).

Nonetheless, a review of the entire record shows the above factual scenario is not consonant to Mr. Negron's testimony at his deposition. A careful review of the deposition transcript of Mr. Negron shows Mr. Negron did not make reference whatsoever to the alleged fact alluded by plaintiff Avilés that defendants were "going to put somebody of their administration" in his place. Mr. Negron stated during his deposition he could not tell who specifically made the comment at the meeting at Mijani, but the comment was that Aviles was

---

**3.** In any event, evidence that a plaintiff is politically active and that a defendant is aware of plaintiff's opposing views is not suf-

ficient to meet this burden. *Rodríguez–Ríos*, 138 F.3d at 24.

going to be removed as soon as possible. (*Negrón's depo., p. 30*). Mr. Negrón specifically testified during his deposition that, contrary to the above factual scenario, the comment he heard that plaintiff Aviles was going to be removed from the Plaza del Mercado **did not mention the reason for his transfer.** Nothing was said at the meeting, except that Avilés was going to be removed. (Emphasis added). (*Id.*).

Thus, the above alleged factual basis offered by plaintiffs to support their allegation of politically discriminatory animus in this case, in that a comment was made that plaintiff Aviles was going to be substituted by someone from defendants' "administration" and that the comment was made by Coronel Mercado and co-defendant Mr. Matos, lacks support on the record.

In addition, plaintiffs claim the following facts demonstrate the "clear" intention of defendants to politically discriminate against plaintiff Avilés: Avilés' transfer happened suddenly; the working conditions to this day at the Centra Pesquero are inferior working conditions than the ones other municipal employees have; Mr. De Miranda and Mr. Matos are aware of the inferior working conditions at the Centra Pesquero and have done nothing to remedy the situation. (**Docket No. 45, p. 3**).

Plaintiffs submit in support of their contention the testimony of Aviles at his deposition in which he indicated that for a month and a half, after he was transferred to the Centra Pesquero, he did not perform any duties. (*Aviles depo. 10/14/05, pp. 38, 54 and 57*). Mrs. Olivo did not give him any type of work during this time. Avilés spent his time observing the movement at the office, the management of the fisherman's wharf and getting to know the environment. (*Id*). After a month and a half at the Centra Pesquero,

Aviles started doing his duties as administrator after Ms. Wanda Olivo (prior administrator) left. (*Id., p. 57*). After Ms. Olivo was transferred from the Centra Pesquero, Aviles admitted he has been performing his duties as administrator. (*Id.*).

Plaintiff Aviles, from the first day he started at the Centra Pesquero up to the day of his deposition, did not have a typewriter to type letters. (*Id., p. 39*). Avilés's computer is obsolete and does not work, has no speakers nor a printer. (*Id., pp. 9 and 39*). Avilés did not have a computer at Plaza del Mercado; his secretary had a typewriter. (*Id., p. 9*).

Further, Mr. Aviles did not have an office at the Centra Pesquero, he sat at a chair for the first week and then, "they pulled out a desk for me and they put it in the hallway which is where I remain until this day [day of deposition October 12, 2005]." (*Avilés depo., 10/12/05 p. 52; Avilés depo. 10/14/05 p. 9*). In addition, after Mrs. Olivo left the Centra Pesquero, Aviles has been performing his duties with a "great deal of difficulty because they keep me without computer, without any useful [sic] with which I can perform my duties, space, privacy, office, keys. I mean, it does not matter how much you try to do a job with all the requirements of the classification, it is impossible." (*Avilés depo. 10/12/05, p. 57*). Avilés was "placed in a corner of a hallway, with absolutely no privacy and absolutely no resources." (*Avilés depo. 10/14/05, p. 22*). Further, Mr. Aviles did not have a secretary, did not have privacy and did not have a file cabinet. (*Id., p. 8*). Avilés had a private office with a lock and file cabinets at the Plaza del Mercado. (*Id., p. 35*).

The fact that plaintiff Aviles did not perform his duties for a month and a half, has been performing his duties since then with difficulty and limited resources, has

no office or keys (facts which have not been disputed by defendants) may be considered by a trier of fact as inferior working conditions tantamount to an adverse employment action. Nonetheless, as above explained, plaintiffs have failed to point to evidence on the record that would permit a rational fact finder to conclude these challenged personnel actions occurred and stemmed from a politically based discriminatory animus. *See Rivera–Cotto*, 38 F.3d at 614. Accordingly, plaintiffs have failed to meet their *prima facie* case.

■■■■ Our inquiry could end here. Nonetheless, we continue our analysis that, even if we were to assume forsake of the argument that plaintiffs have presented *a prima facie* case, defendants herein have presented a legitimate nondiscriminatory reason for the transfer of Aviles based on necessities of service, as stated in the letter of June 24, 2003 signed by co-defendant Mr. Matos, in which it was stated that the Centra Pesquero was under reorganization. Further, the letter indicated that was "why I [Rafael Matos] understand your services and experience make of you an excellent resources for said Office." **(Docket No. 35, Exhibit IV)**.

Defendants further argue Avilés' transfer was performed relying on Article XIV(C) of the Bill or Rights of the Municipality of San Juan Executive Order No. JS–003, Series 2003–2004, which provides that an employee may be relocated under the same program and under the same position that he or she occupies due to the necessities of service.

■■■■ Once a defendants "articulate a legitimate nondiscriminatory reason" for the challenged conduct at which time presumption of discrimination fades and the burden then falls back on plaintiff who must then demonstrate that the proffered reason was a "pretext" and that the deci-

sion at issue was instead motivated by discriminatory animus. *Rivera–Aponte v. Rest. Metropol # 3, Inc.*, 338 F.3d 9, 11 (1st Cir.2003); *Gu v. Boston Police Dept.*, 312 F.3d 6, 11 (1st Cir.2002); *Gonzaléz v. El Día, Inc.*, 304 F.3d 63, 69 (1st Cir.2002); *Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 44–45 (1st Cir.2002); *Feliciano de la Cruz v. El Conquistador Resort*, 218 F.3d 1, 5 (1st Cir.2002); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir.2000). "At this third step in the burden-shifting analysis, the McDonnell Douglas framework falls by the wayside because the plaintiff's burden of producing evidence to rebut the employer's stated reason for its employment action merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Feliciano*, 218 F.3d at 6 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). *See also Moreno Morales v. ICI Paints (Puerto Rico), Inc.*, 383 F.Supp.2d 304–309 (D.Puerto Rico 2005).

■■■■ Thus, after an employer has produced a lawful reason for the adverse employment action, the presumption of discrimination is dispelled and a plaintiff must discredit the employer's proffered reasons for the adverse employment action. *Menzel v. W. Auto Supply Co.*, 848 F.2d 327, 329 (1st Cir.1988). Plaintiff may establish pretext by demonstrating " 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a fact finder could 'infer that the employer did not act for the asserted nondiscriminatory reasons.' " *Santiago–Ramos*, 217 F.3d at 56 (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir.1998)). "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts.

The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as pretext." *Loeb v. Textron,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979); *see also Resare v. Raytheon Co.,* 981 F.2d 32, 42 (1st Cir.1992).

The record shows plaintiffs' contention that defendants' actions were pretext is without merit. It is undisputed the salary and benefits of plaintiff Aviles were not altered after the transfer to the Centro Pesquero. It is also undisputed plaintiff Aviles is still employed at the Centro Pesquero as an Installation Administrator II with the same salary and rank. It is undisputed as well that plaintiff Avilés has been performing his duties since Mrs. Olivo left the Centro Pesquero. Aviles admitted during his deposition he did not refuse or question the transfer from Plaza del Mercado to the Centro Pesquero, his salary was not lowered and his benefits did not change after the transfer. *(Avilés' depo. 10/12/05, p. 39 ).* Prior to this relocation, Aviles admitted he had been relocated within the Municipality of San Juan for necessities of service. *(Id.)* In addition, plaintiff testified he was advised in advanced of the reasons for his transfer and he was in agreement that he was a good resource for the Centro Pesquero. To this effect, plaintiff stated in his deposition the letter of June 24, 2003 from Mr. Matos indicated the reason for the transfer to the Centro Pesquero was that plaintiff's services and experience were an excellent resource for that office. Furthermore, plaintiff recognized that, in the meeting held on June 30, 2003, they discussed plaintiff's capacity, services, experience and excellent resource for the Centro Pesquero. *(Avilés' depo. 10/12/05,* p. *37 ).* In fact, plaintiff recognized that, in a letter of July 3, 2003, he indicated he was in agreement with Mr. Matos that he was a good resource for the Centro Pesquero. *(Avilés' depo. 10/12/05, pp. 37–38 ).*

In addition, plaintiffs have not challenged Article XIV(C) of the Bill or Rights of the Municipality of San Juan Executive Order No. JS–003, Series 2003–2004 under which plaintiff Aviles' transfer was performed.

Finally, as to the alleged inferior working conditions, plaintiffs fail to argue or present evidence to show why the working conditions of plaintiff Avilés at the Centro Pesquero are inferior when compared to the working conditions of other municipal employees. For example, no reference is made to the specific working conditions of other municipal employees, similarly situated to plaintiff Aviles in rank and position, and how the working conditions of plaintiff Avilés are inferior or differ when compared to these other municipal employees.

Thus, plaintiffs have failed to meet their burden to establish the motivating factor behind any adverse personnel action was political discrimination.

In view of the foregoing, it is recommended that defendants' motion for summary judgment of the § 1983 claims **(Docket No. 35)** be **GRANTED** for lack of a *prima facie* case.

### D. Municipal Liability under § 1983.

Next, defendants argue the complaint against them in their official capacity and/or against the municipality should be dismissed because a municipality may not be held vicariously liable under Section 1983 for the torts of an employee on the basis of its employer-employee relationship with the tortfeasor. **(Docket No. 35, pp. 14–17).** In other words, "a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory." *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs totally failed to address

the municipal liability issue under § 1983 in their Opposition to the summary judgment request. (**Docket No. 45**).

■ In an action pursuant to 42 U.S.C. § 1983, there can be no municipal liability under a *respondeat superior* theory. *Monell,* 436 U.S. at 690–95, 98 S.Ct. 2018. Rather, to establish liability against the Municipality, plaintiffs must prove deprivation of a constitutional right by means of "the execution of the government's policy or custom." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see Monell,* 436 U.S. at 690–94, 98 S.Ct. 2018.

■ Municipal liability attaches, however, where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. Under Puerto Rico law, the actions of a mayor "constitute [ ] the official policy of the municipality." *Cordero v. De Jesus–Méndez,* 867 F.2d 1, 7 (1st Cir.1989). Therefore, a Puerto Rico municipality "is liable as a matter of law for an unconstitutional discharge of its municipal employees by the Mayor." *Id.*

We need not discuss in detail this issue in light of our recommendation that defendants' motion for summary judgment as to the § 1983 be GRANTED.

### E. Law 100 Claim.

Defendants claim Law No. 100 does not apply to municipalities inasmuch the Supreme Court of Puerto Rico decided in *Santini Rivera et al. v. Serv. Air, Inc.,* 137 D.P.R. 1 (1994) that the purpose of Law No. 100 is to act as a protection for employees of the private sector against any discrimination. (**Docket No. 35, p. 12**). Plaintiffs have totally failed to address this issue in their Opposition to the motion for summary judgment.

■ Puerto Rico's Law No. 100 does not apply to municipalities, or to municipal officials when they are sued in their official capacities. *Rodriguez Sostre v. Municipio de Canóvanas,* 203 F.Supp.2d 118, 119 (D.Puerto Rico 2002); see, e.g., *Marín–Piazza v. Aponte–Roque,* 873 F.2d 432, 436 (1st Cir.1989); *Gómez–Vázquez v. Díaz–Colón,* 91 F.Supp.2d 481, 483 (D.Puerto Rico 2000); *Orta v. Padilla Ayala,* 131 D.P.R. 227, 239 (1992). Law No. 100 only applies to an "employer," which is defined under 29 P.R. laws Ann. §§ 151 as "any natural or artificial person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person. It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or agencies."

Plaintiffs have not alleged the Municipality of San Juan is an instrumentality operating as a private business. There is no evidence on the record to the effect the Municipality of San Juan is an instrumentality operating as a private business. Accordingly, Law No. 100 does not apply to the Municipality of San Juan, nor to defendants Mayor Santini and Mr. De Miranda in their official capacities.

As such, it is recommended that defendants' motion for summary judgment of the Law No. 100 claims against the Municipality of San Juan, Mayor Santini and Mr. De Miranda, in their official capacities, be **GRANTED.**

### F. Pendent Jurisdiction over State Claims.

Plaintiffs submitted claims under Article 1802 of the Puerto Rico Civil Code which fall within the discretional supplemental jurisdiction of this court for state claims.

 Pendent or supplemental jurisdiction exists whenever there is a claim arising under the Constitution, the laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Rodríguez v. Doral Mortgage,* 57 F.3d 1168, 1175 (1st Cir.1995).

 The exercise of pendent jurisdiction as to plaintiffs' state claims are subject to the Court's discretionary power. The federal claim against defendants under § 1981 survives the motion for summary judgment at this time.[4] Thus, upon an assessment of judicial economy and fairness to litigants, it is recommended to the Court to exercise pendent jurisdiction as to plaintiffs' state claims against defendants.

### V. CONCLUSION

In light of the above discussed, it is recommended that defendants' Motion for Summary Judgment **(Docket No. 35) be GRANTED.** Accordingly, all claims under § 1983 and Law No. 100 should be **DISMISSED.** It is also recommended to the Court to exercise pendent jurisdiction as to plaintiffs' state claims against defendants.

IT IS SO RECOMMENDED.

The parties are ordered to file any objections to this report and recommendation within ten (10) days. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.

1994); *United States v. Valencia,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the Magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").